**STATE of Tennessee, Appellee,**

v.

**Aubrey C. BAKER, Ricky B. Baker, Melvin E. Byrd and George A. Daniel, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

Aug. 14, 1987.

Petition to Appeal Denied by Supreme Court Nov. 9, 1987.

W.J. Michael Cody, Atty. Gen. & Reporter, William Barry Wood, Asst. Atty. Gen., Mark Hudson, Research Asst., John Zimmermann, W. Edward Barnard, Asst. Atty. Gen., Nashville, for appellee.

John L. Norris, Nashville, for Aubrey C. Baker.

William P. Purcell, III, Nashville, for Ricky B. Baker.

Sabin R. Thompson, Nashville, for Melvin E. Byrd.

J. Mitchell Grissim, Jr., Nashville, for George A. Daniel.

O'BRIEN, Judge.

## OPINION

Defendants were convicted in the Davidson County Criminal Court of third degree burglary-safecracking, grand larceny, and possession of burglary tools. Each of them have appealed the convictions. All of them contest the sufficiency of the convicting evidence, some of them generally on the basis that the evidence was insufficient to warrant their conviction, others in some particular aspect of the State's proof.

The State proved beyond a reasonable doubt that shortly after 4:00 a.m. on 6 August 1984 the police responded to a call from the Wal–Mart store, 4990 Nolansville Road in Davidson County. The four defendants were apprehended inside the store. A metal receiving door to the stockroom had been cut across its width about two feet (2') from the bottom with an acetylene torch. On the landing outside the door the officers found an acetylene torch kit. A dark green cloth bag containing tools, a hammer, screwdriver and a sheet or blanket were found nearby. Inside the door they found a safe with the handle knocked off and a crowbar lying on top of the dial rings. They also found various tools including a woodsplitting mall, a "T" hammer, used to open a safe after the combination is set, plus various other tools, a box containing watches and rings from the jewelry department, a container full of knives, and some pieces of luggage. Locks

had been broken off several cabinets and display cases. Defendants Byrd and Daniel were arrested about an hour and one-half after the alarm was sounded. They were captured coming out of the ceiling after being detected by a canine division officer and his dog. It was four or more hours later before the Bakers were discovered hidden between the ceiling and upper floor of the building.

■■■ Ricky Baker and defendant Byrd, insist there was no proof of taking and carrying away, or asportation of, personal goods of another, as charged in the statute. Grand larceny is the felonious taking and carrying away of goods over the value of $200. T.C.A. § 39–3–1103. The law in this State is that there must be a trespass, a taking and an asportation. *Wright v. State,* 549 S.W.2d 682, 684 (Tenn.1977). The trespass is an offense against the possession of the owner. Asportation is accomplished by the slightest movement of personalty by trespass. It is not necessary that the property be moved from the place or premises in which it is kept, such as would constitute a complete severance. The act of a thief in putting an article into his pocket or into any kind of receptacle which he carries is an asportation even though he may never leave the owner's premises. See *State v. Houston,* 688 S.W. 2d 838, 840 (Tenn.Cr.App.1984). The State proved the defendant's broke and entered into the premises of the Wal–Mart Store, removed the property of the owner from its rightful place within the store and carried it to the rear door where they had entered, with the obvious purpose of removing it from the premises.

■■■ Ricky Baker, Byrd and Daniel each contend there was no proof that any of them had burglary tools concealed on or about their person. Defendants can take little comfort from the authorities relied on by them to sustain their position on this issue. *Trousdale v. State,* 168 Tenn. 210, 76 S.W.2d 646 (1934) and *McDonald v. State,* 210 Tenn. 258, 358 S.W.2d 298 (1962), are cited in 12A C.J.S. Burglary, § 48, p. 249 et seq. to the effect that to constitute the offense of possession of bur-

glar tools, possession in a legal sense must be shown, but such possession may be actual or constructive. In the text we find that under a statute punishing any person who carries burglar tools concealed about the person the word "about" is used in the sense of nearness or proximity. Possession upon one's person is not necessary unless expressly required by statute. Possession, for the purposes of such statutes, may be joint or individual, and two or more persons may be in possession of burglar tools where they have the power of control and intent to control jointly. This is sound doctrine and undoubtedly the law in this State. The acetylene torch was found at the door which had been breached by its use. A safe, moved from its usual place in the store, was found immediately inside the door with tools strewn about it, obviously used in an attempt to crack it open. Jewelry and other items, which had been in cabinets and display cases found with their locks broken and smashed, were located adjacent to the safe. This was ample evidence of possession and use of burglary tools.

■■■ A jury verdict approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). The State is entitled to the strongest legitimate view of that evidence and all reasonable or legitimate inferences which may be drawn from it. See *State v. Cabbage,* 571 S.W.2d 832, 836 (Tenn.1978). A verdict against a defendant removes the presumption of innocence and raises a presumption of guilt. *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973). The defendant has the burden of overcoming that presumption. *State v. Brown,* 551 S.W.2d 329, 331 (Tenn. 1977). On appellate review the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The evidence is overwhelming in this case of the guilt of all the defendants as principals, or

of aiding and abetting in all of the offenses for which they were convicted.

■ Aubrey Baker says the trial court erred in permitting the State to introduce evidence of prior felony convictions more than ten (10) years old because (1) the State had not given written notice of its intent to use these convictions for impeachment purposes, (2) the probative value of the convictions did not substantially outweigh their prejudicial effect. He cites *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976) in which our Supreme Court adopted Federal Rule of Evidence 609, applying to impeachment by evidence of conviction of crime. Rule 609(b), as adopted, provides:

> (b) *Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

At the time this defendant was preparing to take the stand, defense counsel requested a hearing to determine which of his prior convictions the court would allow the State to use for impeachment purposes. The State insisted they should be allowed to use several which were more than ten (10) years old on the theory that notice had been served by including all of the prior convictions in the habitual criminal count of the indictment, and again in response to a motion for discovery when defense counsel had been supplied with a list of the prior convictions.[1] Defendant, on the other hand, argues that neither of these procedures was effective written notice of intent

to use such evidence to provide a fair opportunity to contest its use. The trial court ruled that the State had given the defendants sufficient advance written notice of intent to use such evidence to warrant its admission.

Under the facts and circumstances of this case the trial court's decision lends itself to ambiguity. Tenn.R.Crim.P. 16(a)(1)(B) provides that the State will furnish to the defendant a copy of his prior criminal record upon request. The requirement for reciprocal discovery and inspection in the course of trial proceedings cannot be overstressed. See generally *State v. Gaddis,* 530 S.W.2d 64, 69, 70 (Tenn. 1975). Rule 16 provides in some of its sections that the State must provide to the defendant documents and tangible objects, reports, etc, which are material to the preparation of the defense, *or are intended for use by the State as evidence in chief at the trial.* The section pertaining specifically to a defendant's prior record does not contain the italicized provision, but there can be no doubt that the use of a prior criminal record is essential for sentencing purposes at least, therefore notice of its probable use is hardly necessary. However, the rule adopted in *Morgan* specifically provides for *sufficient advance written notice of intent to use such evidence for impeachment purposes to provide [the adverse party] with a fair opportunity to contest the use of such evidence.* (Emphasis supplied). To say that the notice inherent in Rule 16 is sufficient to meet the requirements of the *Morgan* rule is simply not conforming with its requirements. However we find the error harmless in view of the overwhelming evidence of defendant's guilt. *Harrington v. State,* 215 Tenn. 338, 385 S.W.2d 758, 759 (1965); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); T.R.A.P. 36(b).

■ A. Baker says it was error to allow a letter to be introduced into evidence which had not been produced by the State in compliance with a discovery request un-

---

1. Aubrey Baker had thirteen prior felony con- victions more than ten years old.

der Tenn.R.Crim.P. 16(a)(1)(A), permitting inspection of any relevant written or recorded statements made by a defendant. Defense counsel made an appropriate discovery request prior to trial. The State purported to respond to the rule. They did not use the letter in their evidence in chief. The letter, which we have examined, is addressed to a friend of the defendant whose wife was a deputy criminal court clerk at the time of trial. The letter indicates defendant may have used his friend as a courier to file motions for a speedy trial. It also clearly solicits assistance from defendant's correspondent and his wife to have the original warrants against all of the defendants destroyed or altered in some fashion.

State's counsel first asked the defendant if he knew the addressee on the letter, and his wife, which was admitted. He also admitted he had communicated with them, but hedged about whether his communication related to the case at trial. He was then asked if he had written a letter requesting them to tear up the warrants in the case. Objection was made to admission of the letter on the basis that it was not furnished during discovery. The objection was overruled and cross-examination continued. Defendant denied he knew the nature of the employment of his correspondent's wife. After scrutinizing the letter in question he gave an explanation for why it was written. The letter was then marked as an exhibit and passed to the jury after the court admonished them that it could be considered only for the purpose of weighing the credibility of the defendant. The State's argument was that defendant was not entitled to discovery of the letter because it was not introduced in the course of the State's proof in chief. Defendant now earnestly insists that the letter cast doubts on his credibility and deprived him of the opportunity to intelligently prepare for trial. He suggests had he known the letter was to be introduced he might have elected not to testify or in the alternative would have had the opportunity to prepare for its

introduction into evidence. He insists he was entitled to a mistrial.

We find no abuse of discretion on the part of the trial judge in allowing admission of the letter in question into evidence. There was no call by the defense for any of the sanctions enumerated in Rule 16 at the time the State offered the letter. The objection to its admission was based on its relevancy and lack of probative value. Certainly it impeached Baker's credibility. Immediately preceding its admission he denied he knew the wife of his correspondent was the Deputy Criminal Court Clerk. The letter belied this testimony. His defense was based on the theory that his presence in the Wal–Mart Store was innocent and he had gone there to bring out his cousin Ricky Baker who had suffered a seizure while inside the store. The prejudice to his credibility on this issue was minimal. This issue is without merit.

 We also dismiss his contention that it was error to deny admission of written statements by two of his co-defendants into evidence. The issue came about when Baker endeavored to introduce the testimony of co-defendant Byrd and Daniel as his first witnesses. In a jury-out hearing each invoked his Fifth Amendment right against self-incrimination. Defendant then made an offer of proof of affidavits made by each of them. They objected to the admission of these and again invoked their Fifth Amendment right and declined to testify either about the contents or the verity of their respective affidavits. Defendant insists they were admissions against penal interest. He relies on the case of *Breeden v. Independent Fire Insurance Company*, 530 S.W.2d 769, 775 (Tenn.1975). The trial court excluded admission of the affidavits without stating reason, suggesting he might reconsider if the affiants chose to testify.

The affidavits should not have been admitted. In the first instance there was a strong possibility of a *Bruton*[2] violation inherent in the fact that each of the affidavits involved some of the other defendants. In the *Breeden* case, supra, p. 771, the

**2.** *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

court concluded that it was in the public interest and in the best interest of the administration of justice to recognize certain exceptions and formulate guidelines for the application of the admissibility of a declaration against penal interest as one of the expanding exceptions to the hearsay evidence rule. In doing so they specifically limited their ruling to apply only in the context of civil actions. In *Smith v. State*, 587 S.W.2d 659 (Tenn.1979) the court extended the rule adopted in *Breeden* allowing the admission of extrajudicial declarations against pecuniary or penal interest to criminal cases where such declarations against penal interest made by an unavailable declarant were proved trustworthy by independent corroborative evidence bespeaking reliability. It is debatable that the affidavits which defendant sought to have admitted could be categorized at all as declarations against penal interest. They confessed nothing which would subject either of them to criminal liability which had not already been established by the facts in evidence. They tended more to be exculpatory of the affiants than they did to exculpate Baker. There was absolutely no corroborative evidence to support the reliability of the statements. The trial judge ruled correctly that the affidavits were not admissible.

▆ Aubrey Baker also complains he was denied permission to inspect and possibly introduce psychiatric records pertaining to co-defendant Ricky Baker. It is his theory that the records might have corroborated his own testimony in reference to the reason for his presence in the Wal–Mart Store. The defendant Ricky Baker filed a pretrial motion in which he requested that the State, or any other defendant, be prohibited from obtaining, referring to, or introducing into evidence the psychiatric records. The motion alleged that counsel for defendant Aubrey Baker had issued a subpoena for those records. He declared that these records were privileged psychiatric medical records which he did not intend to introduce and the introduction of which would be highly prejudicial to his defense whether introduced on behalf of the State or any of his co-defendants. He declined to

waive his privilege pertaining to the records. T.C.A. § 24–1–207 applies, in pertinent part, to communications between psychiatrist and patient and provides that such communications shall be privileged except in civil and criminal cases and other legal proceedings in which:

 (1) The mental condition of the patient is an issue, or it is determined by the court or board having jurisdiction of the matter that the interests of justice require that the privilege be withheld.

The trial judge indicated he was denying admission of the records on the basis of assertion of the privilege under T.C.A. § 24–1–207. In *State v. Dicks*, 615 S.W.2d 126, 129 (Tenn.1981), in a somewhat analogous situation where a witness purposed to exercise his Fifth Amendment privilege not to testify, the Court had this to say:

"The calling of a witness who will refuse to testify does not fill the purpose of compulsory process, which is to produce testimony for the defendant. (Citation omitted). But, if it did, where there is a conflict between the basic right of a defendant to compulsory process and the witness's right against self-incrimination, as in this case, the right against self-incrimination is the stronger and paramount right. (Citations omitted)."

We are of the opinion that the right of a co-defendant, as in this case, to exercise his Fifth Amendment privilege against self-incrimination has a greater force than the right of a mere witness to the same privilege. We have examined the psychiatric record in question, which was forwarded to this Court as a sealed exhibit. It is a report of a psychiatric examination initiated on 10 August 1984 after Ricky Baker's arrest on this offense. The summary and conclusions and diagnostic impression contained in the report are indeed incriminating in their testimonial character. His right against self-incrimination is superior to that of Aubrey Baker to have the report made available for his defense. It is also quite clear from the contents of the report that it contains little or nothing which would have been of assistance to Aubrey Baker's defense. If there was error at all

in denial of its admission it was totally harmless.

■ We look to Aubrey Baker's contention that the trial court should not have permitted the State to ask the defendant if the police officers who had testified were lying. The Assistant District Attorney General for the State began his cross-examination of the defendant with the question, "Is what you are telling the ladies and gentlemen of this jury is all of those police officers that testified against you are lying?" The reference was to the contradiction between the testimony of the officers and that of the defendant about the circumstances surrounding his arrest when he and Ricky Baker were discovered concealed in the ceiling of the Wal–Mart Store. An objection on the basis that that was a conclusion for the jury to draw was overruled and State's counsel continued with several other general questions in the same vein. It is evident that the cross-examination was inept, probably brought about by the zeal of the examiner to make out his case. The nature of the cross-examination was not so basic to a fair trial that it compels reversal and a new trial. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). See *State v. Beasley*, 536 S.W.2d 328 (Tenn. 1976). Defendant is entitled to a fair trial, nothing more. The remarks of the Assistant District Attorney General did not detract from the fairness of the trial in this case.

■ Aubrey Baker and Ricky Baker each claim prejudice on denial of a severance. Aubrey Baker insists that because the co-defendants' Byrd and Daniel declined to testify and the court refused to admit their affidavits for the jury's consideration the severance should have been granted so he could elicit their testimony at a separate trial.

While Byrd hedged on the question of whether or not he would testify at a later hearing, Daniel stated unequivocally that he would not. It it nothing more than speculation that either of these defendants would testify on Baker's behalf or that they would be tried before he would in a separate trial.

Ricky Baker claims there was a great disparity in the strength of the State's proof among the various defendants. We fail to find any such disparity in our reading of this record. Most if not all of the proof introduced at the joint trial would have been admissible against Ricky Baker in separate proceedings. Moreover we do not find any of the evidence which was introduced to be unfairly prejudicial against any of the defendants. Tenn.R. Crim.P. 8 provides for the mandatory joinder of offenses and for the joinder of defendants where each of them may be charged with the accountability for each offense included. This issue is without merit as to both defendants.

■ Ricky Baker takes issue with certain comments of the trial court made during the charge to the jury. For some unaccountable reason, not disclosed in this record, the trial judge, while instructing the jury on the elements of the offense of third degree burglary, concluded his remarks with the statement "I'll drink to that—water," then apparently drank from his water glass. Again, as he was telling the jury how to report their verdict against the defendant Ricky Baker for possession of burglary tools he informed them that if they had a reasonable doubt of his guilt of that offense it would be their duty to give him the benefit of the doubt and return a verdict of not-guilty. He then commented again "I'll drink to that," repeating his actions. Apparently no notice was taken of the remarks nor was there any objection made at the time. However ill timed or inappropriate these comments may have been we do not believe they were intended to or did prejudice the defendant's right to a fair trial. The issue is overruled.

■ Defendant Melvin Byrd, independently of his co-defendants, argues that the prosecution improperly commented or elicited testimony regarding his post-arrest silence. Prior to trial the court directed the suppression of a statement made by Byrd to the police. During trial the State's counsel asked a police officer "Did you advise

him of his constitutional rights?" and received an affirmative reply. The officer was then asked "And did you—what else did you do as far—as far as the investigation goes?". A request for mistrial was made contending the testimony was a comment on Mr. Byrd's post-arrest silence. The trial court overruled the motion. He did not think the question was probative and offered curative instructions which were declined.

We have examined the authority cited on behalf of defendant. It involved a District Attorney's comments about a defendant's right to not take the stand to testify. In this case the District Attorney did not argue defendant's silence to the jury, post-arrest silence was not used for impeachment purposes, and the police officer was not asked if the defendant made any statement after being advised of his constitutional right. We are asked to conclude that the examination here was a reflection on the defendant's post-arrest silence. We do not believe such a conclusion is warranted and there was no improper comment on the silence of the defendant. This issue is without merit.

■ Byrd also says the court erred by allowing into evidence testimony about an uncounseled custodial statement made by him. As he was being escorted from the Wal–Mart Store he provoked an attack by one of the search dogs at the scene by grabbing and jerking its leash. At the same time he commented "If I had got a rifle I would have shot that SOB." We do not see a great deal of relevance about the remark however it was made contemporaneously with his arrest and was admitted by the trial court to show his intent in entering the store. It was a voluntary, spontaneous statement made by the accused at the time of his arrest and was admissible. The decision to admit or exclude evidence is left to the sound discretion of the trial judge which will not be disturbed unless it has been arbitrarily exercised. *State v. Hawk*, 688 S.W.2d 467, 472 (Tenn.Cr.App.1985). There was no error in admission of the statement.

■ Defendant Byrd argues that the trial court deprived him of his privilege against self-incrimination by implying he had an obligation to testify in his own behalf. He further claims the court called undue attention to the fact that he did not testify with cumulative and repetitious instructions on this point. He says that after having granted a special request for jury instructions on the right of a defendant not to testify, the court also read to the jury the instruction found in Tennessee Pattern Jury Instructions, Criminal, § 38.06, pertaining to such matters.

Defendant mis-states the sequence in which the instructions were delivered to the jury by the trial judge. Apparently Byrd submitted a request for special jury instructions on this issue. The brief does not point out where in the record this request was made nor does it refer to the special instructions as an exhibit to the record. When the trial judge delivered his instructions to the jury he first instructed them generally that they should place no significance on the fact that any of the defendants had not taken the stand as a witness. That they were presumed innocent, and the burden was on the State to prove their guilt beyond a reasonable doubt. That they were not required to take the stand in their own behalf, and their failure to do so could not be considered for any purpose against them. Subsequently, at the conclusion of his instructions he read the special instructions submitted by Byrd on that point, as well as an instruction pertaining to voluntary drunkenness as a defense in a criminal charge. We do not find in the instructions as delivered any unconstitutional implication that Byrd had an obligation to testify in his own behalf or that the court had unconstitutionally called undue attention by cumulative and repetitious instructions to the fact that he did not testify. This issue is totally without merit.

■ Mr. Daniel raises several issues which are pertinent only to his defense. First, he complains of certain statements made by co-defendant Aubrey Baker during his testimony. In two completely unso-

licited incidents Baker brought out evidence of Daniel's prior criminal record. In the first of these, while trying to cast an innocent light on his presence in the Wal–Mart Store by explaining he was there to get Ricky Baker out of the store, he said inter alia, "And with a record like Mr. Daniel." He implied the police had shot Daniel's leg off at a quik-service market and he was afraid if they got caught in the Wal–Mart Store the police would shoot them too. On cross-examination he was asked how long he had known George Daniel and volunteered that he had known him in the penitentiary. In the first instance there was no appropriate contemporaneous objection made to the proffered evidence. See *State v. Harrington,* 627 S.W.2d 345 (Tenn.1981). In the second occurrence appropriate objection was made along with application for mistrial, which was denied. When proper objection was made curative instructions were given. Subsequent to an out-of-jury discussion curative instructions were again submitted to the jury. This Court must assume that the jury followed the trial judge's instructions. *State v. Lawson,* 695 S.W.2d 202, 204 (Tenn.Cr.App. 1985). Although the witness' statement was clearly improper it was not elicited intentionally by the State. The evidence in this record overwhelmingly established the guilt of all the defendants. We are convinced beyond a reasonable doubt that the incompetent evidence was harmless, especially with the curative instructions given by the trial judge. See T.R.A.P. 36(b).

■ Also without merit is the contention that the defendants were prejudiced because, they contend, some of the jury saw them in handcuffs. According to the testimony of Byrd and Daniel at the hearing on the motion for new trial, while they were being transported from their place of confinement to the courtroom during trial some of the jurors observed them in the elevators and elsewhere while they were wearing prison garb and handcuffs. This was not mentioned to the trial judge until the motion for new trial. The defendants were not handcuffed or dressed in prison attire in the courtroom. The only evidence in the record that any juror saw the defendants in that attire or in handcuffs was the testimony of these two defendants. Certainly a defendant should not be required to wear prison clothing or be in handcuffs during trial in a courtroom, except insofar as the trial court, in its sound discretion may find it necessary to prevent escapes, violence or misconduct which would impede the trial. See 23 C.J.S., Criminal Law, § 977, p. 904; *Seelbach v. State,* 572 S.W.2d 267, 271 (Tenn.Cr.App. 1978). Common sense must prevail in such instances where a jury or jurors inadvertently see a defendant dressed in prison clothing. Reason dictates that they must know a person on trial is either on bail or in confinement during the course of a trial. The evidence of the guilt of all the defendants in this case was strong. There is no indication that any of them were prejudiced by the occurrence complained of.

■ Some of the defendants complain jointly of the admission of testimony of witnesses for the State who were not listed on the indictment and whose names were not disclosed to them prior to the trial in violation of T.C.A. § 40–17–106. The courts have ruled this code section is directory only and that a witness is not disqualified to testify because his name does not appear on the indictment. *Aldridge v. State,* 4 Tenn.Cr.App. 254, 470 S.W.2d 42 (1971). This ruling does not excuse the State from compliance with the statute when the names of their witnesses are known beforehand. Our Supreme Court has noted the purpose of furnishing names is to prevent surpise to defense counsel. See *State v. Melson,* 638 S.W.2d 342, 364 (Tenn.1982). The record does not indicate why the names of two of the State witnesses was not endorsed on the indictment. Defendants did not object to the introduction of their testimony when it was proffered. They must show prejudice or a disadvantage resulting from the delay of furnishing the names of such witnesses. *State v. Kenner,* 640 S.W.2d 51, 56 (Tenn. Cr.App.1982). The defendants have failed to show undue prejudice or that the State took unfair advantage by the introduction

of the testimony. We find the issue to be without merit.

All four defendants, for various reasons, challenged the propriety of the sentence imposed by the trial court.

 Aubrey Baker complains of consecutive sentencing. Initially he was sentenced to a term of fifteen (15) years for third degree burglary-safecracking, ten (10) years for grand larceny and ten (10) years for the possession of burglary tools, with all sentences to be served consecutively to each other and consecutively to any other sentences defendant had on other cases. Subsequently, upon motion of the defendants to reduce the sentence the judgment was amended to set the sentences on two of the offenses concurrently for an effective sentence of twenty-five (25) years. Defendant requests de novo review as he is entitled to do in accordance with T.C.A. § 40–35–402(a) and (d).

The only ground stated is that despite his extensive criminal record all of the convictions in the instant case arose out of a single transaction and his conduct neither caused nor threatened serious bodily injury to anyone nor did he contemplate that his conduct would do so. The trial judge found him to be a persistent and especially aggravated offender because he was on parole at the time this offense occurred. Thus his sentence falls within Range II. T.C.A. § 40–35–109. The pre-sentence report indicates that since the age of fifteen (15) Aubrey Baker has been arrested and/or charged with over sixty (60) criminal offenses at least four of which resulted in convictions occurring within ten (10) years immediately preceding the commission of the instant offense. He is undoubtedly a persistent offender. T.C.A. § 40–35–106(a)(2). The record shows that he was released on parole on four prior felony convictions approximately ninety (90) days before the occurrence of the instant conviction offense. He is undoubtedly an especially aggravated offender. T.C.A. § 40–35–107(3)(B). His sentence was appropriate.

 Ricky Baker insists he should not have received a Range II sentence because the State failed to prove he was a persistent offender. He concedes he has received two prior felony convictions occurring within five (5) years immediately preceding the commission of the instant offense which fall within the scope of T.C.A. § 40–35–106(a)(1) as calculated within (b)(2) of that code section. He argues however that the prior conviction offenses were committed as part of a single course of conduct within a period of twenty-four (24) hours during which there was no substantial change in the nature of the criminal objective in accordance with T.C.A. § 40–35–106(b)(1) and therefore they constitute one conviction for purposes of determining prior convictions under the section. The trial judge found him to be a persistent offender because the two prior convictions in question were separate and distinct crimes although they occurred within the same twenty-four hour time frame. He expressed some doubt about whether defendant could be classified as an especially aggravated offender under the proof in the case.

The record is in complete confusion on this issue. In the notice of sentence enhancement for Ricky Baker the State noted that he had been convicted on 24 January 1975 for armed robbery in Case No. 3133 in Franklin County, Georgia. The date of this offense was 1 January 1975. He was convicted in Gwinnett County, Georgia of armed robbery in Case No. 10,030 and received a sentence of twenty (20) years for an offense committed on 1 January 1974. On each of the foregoing offenses he was paroled on 10 July 1981. The notice also alleged he was on bond release status in Case No. 12995, Rutherford County, Tennessee at the time the conviction offense in this case was committed.

There is a long history of criminal conduct, with offenses and convictions set out in the pre-sentence report beginning as a juvenile in 1972 and ending with the conviction offenses in August of 1984. This list does not indicate its source although it is probably from the local law enforcement agencies. The list includes one armed robbery in the State of Georgia in January,

1975 for which defendant was sentenced to twenty (20) years. The pre-sentence report also includes one page of a Federal Bureau of Investigation arrest and disposition report. This report indicates two separate convictions for armed robbery and one for robbery with respective sentences of twenty (20) years each, all in the State of Georgia.

Defendant testified he had only two prior convictions in Georgia for robberies which occurred on 1 January 1975 approximately thirty minutes apart when he and a companion robbed separate Ramada Inns in adjoining counties.

The trial judge was correct in his ruling no matter which of the preceding chronological sequences of defendant's offenses apply. If we were to accept defendant's record of his convictions as correct we would still be required to reject the argument that the two separate robberies were part of a single course of conduct within a period of twenty-four hours during which there was no substantial change in the nature of the criminal objective. Bearing in mind that criminal statutes must be strictly construed in favor of a defendant, the rule also requires that in order to determine legislative intent we must look at the statute itself, giving its language its usual and ordinary meaning in order to avoid any forced construction of its terms. See *Key v. State*, 563 S.W.2d 184 (Tenn.1978). It is obvious that the Legislature intended in the enactment of T.C.A. § 40–35–106(b)(1) to mean the conviction for two or more felonies committed as part of a single course of conduct within a period of twenty-four (24) hours to encompass a situation similar to that structured by defendants convictions in the instant case, of burglary-safecracking, grand larceny, and possession of burglary tools all growing out of the same event. It would be a distortion of the language of the statute to construe it to mean two entirely separate offenses committed in two separate counties against separate victims as part of a single course of conduct. We find the issue to be without merit.

Melvin Byrd complains the court erred in finding him to be an especially aggravated offender subject to a Range II sentence. The court found, and the record confirms that, at the time of this offense, this defendant was on bond from at least three different counties and had been convicted of one or more of those offenses at the time of sentencing. The State made out a prima facie case of this fact and nothing more is required. Defendant was correctly sentenced as an especially aggravated offender under T.C.A. § 40–35–107(3)(A).

He also insists the court erred in finding him to be a persistent offender. It is his contention that the Legislature by the enactment of the Criminal Sentencing Reform Act of 1982 adopted a new and different definition of "persistent offender" than that prescribed by the court in *Gray v. State*, 538 S.W.2d 391 (Tenn.1976). T.C.A. § 40–35–210(e) specifically sets out that where there are multiple convictions, the court shall order sentences to run consecutively or concurrently as provided by Rule 32 of the Tenn.R.Crim.P. or as elsewhere provided by law. Provided, the definition of a persistent offender under § 40–35–106 shall not be construed as altering the definition of a persistent offender for purposes of imposing consecutive or concurrent sentences as provided by the Tennessee Supreme Court.

The trial court found Aubrey Baker, Melvin Byrd and George Daniel to be persistent offenders and multiple offenders under the *Gray* standards. He fixed the sentences of these three defendants to be served consecutively, with the sentence for Ricky Baker to be served concurrently. Exercising our authority to conduct a de novo review of all of the sentences assessed in this case we find them to be appropriate and proper. This includes the sentence for defendant Daniel who argues the court erred in failing to consider the mitigating and enhancing factors prescribed by the Sentencing Reform Act in assessing consecutive sentences. There is no merit to this argument. The procedure for imposing consecutive sentences is pre-

scribed in T.C.A. § 40–35–210(e), as we have noted heretofore. The mitigating and enhancement factors set forth in T.C.A. § 40–35–110–111 are involved in the range and duration of a specific sentence for an offense and not with the determination of whether they shall be served consecutively or concurrently.

 Daniel also insists that a thirty-five (35) year total sentence for non-violent property offenses constitutes cruel and unusual punishment, citing *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The *Helm* case dealt with a life sentence without possibility of parole for a seventh non-violent felony under the South Dakota recidivist statutes and is readily distinguishable from the case at bar. Moreover, on motion of the defendants the court reconsidered the order in which the sentences were to be served. This resulted in a net sentence for Daniel of twenty-five (25) years incarceration. He also complains that the trial court did not consider the mitigating and enhancement factors required by T.C.A. § 40–35–210. The cursory statements made by the trial judge in reference to the sentencing was bare compliance with the specific findings of fact mandated by T.C.A. § 40–35–209 and 210, however we have reviewed this record in detail and unquestionably the trial judge complied with all the requirements of the Sentencing Reform Act.

Two things stand out in this record. The first of these is the criminal history of all the defendants. All of them began as juveniles with Aubrey Baker in 1959, Ricky Baker in 1974, Melvin Byrd in 1940, and George Daniel in 1966. All of them continued, almost without remission, until the date of the conviction offense in this case.

The other factor to be commended is the outstanding service by appointed counsel rendered to all of these defendants. In view of the overwhelming evidence of guilt of each of them it was a major task to mount a defense on their behalf. The massive and meticulous record in this case clearly demonstrates the excellent legal representation afforded them.

The judgment of the trial court is affirmed.

BYERS, J., and JAMES C. BEASLEY, Special Judge, concur.