IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 15, 2007

**STATE OF TENNESSEE v. JAMES PAUL HURT**

**Direct Appeal from the Circuit Court for Marshall County**
**No. 16163     Robert Crigler, Judge**

---

**No. M2006-02381-CCA-R3-CD - Filed December 27, 2007**

---

James Paul Hurt, the defendant, was convicted of selling .5 grams or more of a Schedule II controlled substance and also of delivering the same substance. Both are Class B felonies. These convictions were merged, and the defendant was sentenced as a Range II, multiple offender to twenty years confinement. On appeal, the defendant avers that (1) the evidence was insufficient to support the guilty verdicts, and (2) the physical restraints placed on the defendant during trial violated his constitutional rights. After review, we have concluded that the evidence was sufficient and that the restraints and safeguards imposed were reasonable under the circumstances and constitutionally permissible. Accordingly, the conviction is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Jheri Beth Rich, Lewisburg, Tennessee, for the appellant, James Paul Hurt.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case involved a planned undercover operation by the 17th Judicial District Drug Task Force (Task Force). This operation originally targeted Sheila Howard but, instead, resulted in snaring the defendant. Joey Callahan volunteered to act as a confidential informant and attempt to buy drugs within the Task Force's jurisdiction. Callahan had entered an open sentence guilty plea and hoped to benefit himself by his cooperation.

Sheila Howard, at the time of trial, was serving a sentence in the Tennessee Department of Correction on unrelated charges. She testified that on January 20, 2004, she lived in Lewisburg. She

was called by Callahan, her cousin, who asked for an eight ball of crack cocaine. In turn, Howard called the defendant, who told Howard that he could supply the cocaine. She informed Callahan, who came to her house. The defendant came later and placed the packaged cocaine on a table. Callahan took it and replaced it with $175, the previously agreed price. Howard took the money into the kitchen, and the defendant followed her. The defendant offered to pay her a share, but she declined. Two audio tapes were played which contained the voices of Callahan, who was wired with a transmitter, and Howard.

Callahan was monitored both by audio and constant visual surveillance by members of the Task Force. Shane George, a member of the Task Force, testified that a camera had been mounted in the Task Force vehicle provided to Callahan on that day. It showed that Callahan arrived at Howard's at 3:56 p.m. and re-entered the vehicle to leave at 4:09 p.m. In order to preserve Callahan's role as confidential informant, no arrests were made on that date.

Several Task Force officers were involved in maintaining surveillance. Officer James Whitsett knew the defendant and recognized him as he entered and left the Howard residence. Another officer, Timothy Miller, videotaped the defendant leaving Howard's residence.

Callahan's testimony was consistent with the description provided by Howard. Callahan freely admitted he hoped his efforts as an informant would result in a more lenient sentence for himself.

The drugs obtained from the defendant were tested at the Tennessee Bureau of Investigation laboratory and confirmed as being of a cocaine base, weighing 2.4 grams.

The defendant chose not to testify at trial and expressed his choice during a <u>Momon</u> hearing.

Sufficiency

The defendant's first issue challenges the sufficiency of the evidence presented to support the defendant's conviction for Sale of a Schedule II Controlled Substance. The second issue alleges that the convicting proof was circumstantial and did not exclude the possibility of the defendant's innocence. We review these issues together.

When reviewing the sufficiency of the evidence, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); <u>State v. Reid</u>, 91 S.W.3d 247, 276 (Tenn. 2002); Tenn. R. App. P. 13(e). Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to demonstrate why the evidence is insufficient to support the verdict. <u>See</u> <u>State v. Evans</u>, 108 S.W.3d 231, 237 (Tenn. 2003). On appeal, the State is entitled to the strongest legitimate inferences that may be drawn therefrom. <u>State v. Smith</u>, 24 S.W.3d 274, 279 (Tenn. 2000).

A verdict of guilt by the trier of fact resolves all conflicts in the evidence in favor of the prosecution's theory.  See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  "Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court does not re-weigh or re-evaluate the evidence."  Evans, 108 S.W.3d at 236 (citing Bland, 958 S.W.2d at 659).  Nor may this court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact.  Evans, 108 S.W.3d at 236-37.  A conviction may be based entirely on circumstantial evidence only where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone."  State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993) (quoting State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985)).

It is a criminal offense to knowingly deliver or sell a controlled substance.  Tenn. Code Ann. § 39-17-417(a)(2)(3).  Cocaine is classified as a Schedule II drug.  Tenn. Code Ann. § 39-17-408(b)(4).  "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."  Tenn. Code Ann. § 39-17-402(6).  The delivery or sale of more than .5 grams of a cocaine-based substance is a Class B felony.  Tenn. Code Ann. § 39-17-417(c)(1).

Although the defendant focuses on the alleged circumstantial nature of the evidence, the most damning evidence was direct.  Admittedly, it was the testimony of Howard and Callahan, two convicted felons, but it was within the purview of the jury to weigh and evaluate their testimony.  Other direct evidence by the officers conducting surveillance confirmed surrounding details of the drug transaction.  Standard procedures were followed to insure that Callahan was not in possession of drugs prior to the transaction.  The conversations between Callahan and Howard, prior to their meeting and in her house, were monitored.  The defendant has provided no credible reason to support any theory that the finger of guilt wavered from the defendant to another party.  The evidence supporting the defendant's guilty verdict was ample.

Physical Restraints on Defendant During Trial

The defendant contends that the trial court's order to shackle the defendant during trial violated the defendant's constitutional rights.  The State urges us to consider the issue as waived pursuant to Tennessee Rule of Criminal Procedure 10(b).  The defendant has skirted close to waiver by his brief treatment in citing to authority, references to the record, and supporting argument.  However, we will exercise our discretion to review the issue on its merits.

The issue arose during the trial court's lunch break of the one day trial.  The only account of the incident was provided by the Assistant District Attorney as both the trial judge and defense counsel had left the courtroom.  The unrebutted account stated that a deputy and a jailer requested that the defendant go to a holding facility within the courtroom. The incarcerated defendant refused and stated he was going to lunch.  When touched by the officers, the defendant began to swing at both officers.  The officers attempted to deflect the defendant's blows without striking back.  The jailer's spectacles were broken, and he sustained a cut around the left eye.  The defendant got the jailer down and hit him several times around the head.  The prosecutor intervened and asked the defendant to stop and come to him.  The defendant complied and was placed in the holding cell.

The prosecutor personally, and on behalf of the two officers, asked that the defendant be shackled and handcuffed for the duration of the trial. The defense counsel responded that the defendant had acted irresponsibly because he was hungry. However, she objected to shackling as being "highly, highly prejudicial." Defense counsel also asked that the defendant be brought in to speak. The trial court then granted the State's motion without further hearing other than to admonish the defendant that he would be tried in absentia in the event of further misbehavior.

Our common law has a long history of revulsion toward the physical restraint of defendants during trial. See Deck v. Missouri, 544 U.S. 622, 626-629 (2005). The Deck Court concluded that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Such a determination may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial." Id. at 630.

Although there is a legal presumption against the necessity of in-court restraints on a defendant, in some instances, a defendant may be restrained during his or her trial. The burden is on the State "to show the necessity of any extreme physical measures." Willocks v. State, 546 S.W.2d 819, 821 (Tenn. Crim. App. 1976). It is within the discretion of the trial judge to determine whether a defendant should be shackled during trial. Id. at 822. Because shackling is considered inherently prejudicial to a defendant, there must be a clear showing of necessity in the record for this court to conduct a meaningful review of the trial judge's actions, the trial court (1) should conduct a hearing, (2) must state upon the record its reasons for ordering physical restraints, and (3) must give adequate jury instructions that the restraint of the defendant should in no way affect the jurors' decision. Id. Where shackles are used to restrain a defendant before a jury, the shackles must be the least drastic security measure that will reasonably suffice. Id. "[A] defendant should not be required to wear prison clothing or be in handcuffs during trial in a courtroom, except insofar as the trial court, in its sound discretion may find it necessary to prevent escapes, violence or misconduct which would impede the trial." State v. Baker, 751 S.W.2d 154, 164 (Tenn. Crim. App. 1987).

The record does not precisely reflect the method of restraint used on the defendant during trial. At the motion for new trial, the trial court expressed the opinion that the jury did not see the shackles due to the physical layout of the courtroom which blocked their view of the defendant and that the defendant kept the restraints under the table.

In this case, the defendant's violent actions gave adequate reason for the trial court to take remedial measures for courtroom security. An adequate hearing was conducted before the defendant was restrained during trial. No jury instructions were given the jury concerning the restraints. However, if the jury, in fact, was unaware of the shackles, instructions were unnecessary and conceivably would have a harmful effect as to the defendant. See State v. Taylor, 771 S.W.2d 387, 396 (Tenn. 1989). We conclude that, under the circumstances of this case, the trial court adequately complied with the requirements of Willocks and that no reversible error was committed.

Conclusion

After review, we conclude that the evidence was sufficient to support the jury's verdicts and that the defendant's constitutional rights were not abridged by the physical restraints imposed on him. The verdict is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE