IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 21, 2018

**JOSEPH KANTRELL NORRIS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Williamson County**
**No. CR-160292     Joseph Woodruff, Judge**

_____

**No. M2017-01006-CCA-R3-PC**

_____

The Petitioner, Joseph Kantrell Norris, appeals from the denial of post-conviction relief by the Williamson County Circuit Court. In this appeal, he argues that he received ineffective assistance of counsel. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and NORMA MCGEE OGLE, J., joined.

Matthew J. Crigger, Brentwood, Tennessee for the Petitioner, Joseph Kantrell Norris.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Kim R. Helper, District Attorney General; and Terry Wood, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On December 23, 2011, the homes of Sharon Perkins and Tory Dunlap were burglarized and robbed by four armed men. State v. Joseph Kantrell Norris, No. M2014-00857-CCA-R3-CD, 2015 WL 3486968, *1-2 (Tenn. Crim. App. Dec. 16, 2014), no perm. app. filed. Two weeks prior to the offenses, the Petitioner inquired as to where Dunlap lived. He had heard Dunlap had cash and wanted to rob him. On the day of the offense, the Petitioner returned and again inquired about Dunlap, who apparently lived behind the home of the resident to whom the Petitioner made inquiry. An hour after being advised of the general area where Dunlap lived, gunshots rang out from Dunlap's house. The four men went to Perkins' home first, who lived adjacent to Dunlap. Even though Perkins told the men they had the wrong house, the men forced Perkins and her

guests to go to Dunlap's home. The men held Perkins and her guests confined in the living room and took their purses and cell phones. When Dunlap ultimately arrived at his home, he was shot twice in the leg. Deangelo Miller, a co-defendant, later testified that it was the Petitioner's idea to rob Dunlap, that the Petitioner gave him a .25 caliber gun, and that the Petitioner directed the men during the commission of the offenses. Finally, the Petitioner told Miller later that night, "I fired [Dunlap] up[,]" and divided the marijuana taken from Dunlap's home between the men. Id. at *2.

The Petitioner was subsequently indicted of and plead guilty to various counts of attempted second degree murder, especially aggravated kidnapping, especially aggravated burglary, aggravated burglary, aggravated assault, aggravated robbery, and reckless endangerment. The Petitioner agreed to plead guilty as a Range II offender. With consecutive alignment, the trial court imposed a within range total effective sentence of 140 years. The Petitioner appealed, arguing that the sentence was excessive. After review, this court concluded that the sentence was reasonable and affirmed the trial court's judgments. In doing so, we reasoned as follows:

> Having reviewed the record before us, we conclude that the trial court clearly stated on the record its reasons for imposing the sentences imposed, and all of [the Petitioner's] sentences are within the appropriate ranges. The trial court found three applicable enhancement factors and no applicable mitigating factors. The record reflects that the trial court considered the purposes and principles of the Sentencing Act. Therefore, the trial court's imposition of the maximum sentences is presumed reasonable.
>
> . . . .
>
> In the instant case, the trial court found two statutory factors, either of which alone would be sufficient to support the imposition of consecutive sentencing. The trial court found that [the Petitioner] was an offender whose record of criminal activity was extensive and that [the Petitioner] is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. With regard to the court's finding that [the Petitioner] was a "dangerous offender," the trial court further found that consecutive sentences were reasonably related to the severity of the offenses committed and were necessary to protect the public from further criminal conduct by the [the Petitioner][.] We conclude that the trial court did not abuse its discretion in sentencing [the Petitioner]. Accordingly, the judgments of the trial court are affirmed.

Joseph Kantrell Norris, 2015 WL 3486968, at *4-5 (internal citations omitted).

The Petitioner filed a pro se petition for post-conviction relief on April 27, 2016, arguing, inter alia, that he received ineffective assistance of trial counsel. The post-conviction court entered a preliminary order appointing counsel. On August 11, 2016, through appointed counsel, the Petitioner filed an amended petition claiming trial counsel rendered deficient performance by failing to introduce mitigating proof of the Petitioner's mental health during the sentencing hearing.

At the March 30, 2017 post-conviction hearing, both the Petitioner and trial counsel testified. The Petitioner testified that he grew up in Nashville and had a "rough" childhood. During his childhood, he spent time in Vanderbilt Children's psychiatric ward. He was sexually harassed by his mother's boyfriends and grew up having to watch them beat his mother. He received his special education diploma in 1998 while incarcerated. The Petitioner had worked several short-term jobs but had trouble keeping them due to his "mental issues." The Petitioner said that he experienced mental issues all his life and first received mental health treatment at age eight. He described his episodes as "blank out spasms," during which he cannot "feel nothing, hear nothing, [or] see nothing . . . ." The Petitioner was suicidal in the past and was given mental health treatment while incarcerated for prior convictions. At the hearing, the Petitioner said he had not taken his "psych medicine in three days so . . . [he] [was] kind of in and out." He was currently prescribed medication for paranoid schizophrenia, homicidal and suicidal thoughts, depression, and seizures. On cross-examination, the Petitioner admitted he had an extensive criminal history. He also admitted that he had received mental health treatment while incarcerated for "hearing voices and seeing things." When confronted with the fact that no doctor had actually given him a mental health diagnosis, the Petitioner said "I been told that since I was eight years old from Vanderbilt Child." None of the medical records listed an actual diagnosis.

Without offering a witness to explain the import of the following records, the Petitioner offered the following exhibits to the hearing: Exhibit 3: Mental Health Cooperative Progress Notes dated May 7, 2008 (three pages); Exhibit 4: Middle Tennessee Mental Health Discharge Summary dated June 12, 2009 (four pages); and Exhibit 5: Southern Health Partners Inmate Sick Call Slip (collection of various dates) (approximately 85 pages).

Trial counsel, a veteran criminal defense attorney with over 100 jury trials of experience, had previously dealt with people with mental health issues and referred them to the mental health department for evaluation when necessary. She did not refer the Petitioner for an evaluation because (1) he was "adamant almost to the very end that he was mistakenly arrested;" and (2) she could not simultaneously pursue a mental health

defense and a defense of "I didn't do it." She was aware however that the Petitioner had some psychological issues, took medication while in jail, and suffered from a very rough childhood. Prior to sentencing, she tried to obtain the Petitioner's mental health records from one facility, but they were too old. She chose not to introduce records from another facility at sentencing because there was no clear diagnosis of schizophrenia. Although bipolar disorder and depression were mentioned in the records, she did not consider them to be "serious enough mental health issue[s] [] to rule the day." In addition, there was language about anger and anger management, and she was afraid that presenting those records would do as much harm as good.

One of trial counsel's biggest fears was consecutive sentencing because, in her experience, the sentencing judge was "tough" and "not very sympathetic[.]" Counsel believed presenting the records would justify consecutive sentencing according to case law. Nevertheless, at the sentencing hearing, counsel argued two other mitigating factors: (1) that the Petitioner had admitted to guilt, and (2) that the kidnapped victims were unharmed and ultimately released. Trial counsel spent a "great deal of time" researching the case and had a banker's box full of information. She had the case for over a year and discussed it at length with the Petitioner. She hired a private investigator, interviewed three key witnesses, and filed a successful motion to suppress evidence. She was prepared to go to trial and tried to persuade the Petitioner to continue with the trial instead of entering guilty pleas.

In a written order denying relief, the post-conviction court found that the Petitioner suffered from health issues; however, there was not sufficient proof to adequately determine the degree of his mental illness. The court found the Petitioner appeared credible and intelligent during the post-conviction hearing. However, the court determined that, "[trial counsel] articulated many sound reasons in support of her decision to not put forth proof regarding [the Petitioner's] mental health issues. [Trial counsel] was very familiar with the facts of [the Petitioner's] case. She was adequately prepared to represent him at both his trial and sentencing hearing." The court concluded that "due to the overwhelming number of applicable enhancement factors, [the Petitioner] cannot prove he was prejudiced by [trial counsel's] decision not to present evidence of his mental health . . . ." It is from this written order that the Petitioner timely appeals.

**ANALYSIS**

The Petitioner argues that trial counsel was deficient in failing to produce mitigating evidence of his mental illness at the sentencing hearing. The State argues, and we agree, that the Petitioner failed to demonstrate that trial counsel was deficient in her performance or that her alleged deficiency prejudiced his sentence.

In reaching our conclusion, we are guided by the following well-established law pertaining to post-conviction relief. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (citations and internal quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Felts, 354 S.W.3d at 276 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim" and "a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697). This court reviews a claim of ineffective assistance of counsel, which is a mixed question of law and fact, under a de novo standard with no presumption of correctness. Smith v. State, 357 S.W.3d 322, 336 (Tenn. 2011).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence establishes that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The petitioner must show that "counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Mobley v. State, 397 S.W.3d 70, 81 (Tenn. 2013) (citation and internal quotation marks omitted). A reasonable probability of being found guilty of a lesser charge satisfies the prejudice prong. Id.

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner argues that trial counsel was deficient in her performance by failing to introduce mitigating evidence of his mental illness or to humanize him in any way. Specifically, the Petitioner asserts that when evidence of mental illness is provided, it can show that mental illness contributed to the criminal conduct and rehabilitation becomes more likely because mental illness can be treated. While this may generally be true, in this case, trial counsel thoroughly researched the Petitioner's medical health records, and there was no definite mental health diagnosis. As such, trial counsel's reasons for not introducing the records at sentencing were well informed and will not be second guessed by this court. Moreover, the Petitioner agreed to be sentenced as a Range II offender and received a within range sentence, albeit with consecutive alignment. The Petitioner has failed to show how the admission of non-specific mental health records as a mitigating factor would have altered the consecutive nature of his sentence. See State v. Baker, 751 S.W.2d 154, 166-67 (Tenn. Crim. App. 1987) (noting that "the procedure for imposing consecutive sentences is prescribed in T.C.A. § 40-35-210(e) . . . [and] [t]he mitigating and enhancement factors set forth in T.C.A. § 40-35-110-111 are involved in the range and duration of a specific sentence for an offense and not with the determination of whether they shall be served consecutively or concurrently"). Accordingly, the record supports the determination of the post-conviction court. Because the Petitioner has failed to demonstrate deficient performance or prejudice arising therefrom, he is not entitled to relief.

- 6 -

**CONCLUSION**

Based upon the foregoing reasoning and analysis, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE