IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 26, 2023 Session[1]

## STATE OF TENNESSEE v. LEONARD JOHN CLEMONS

**Appeal from the Criminal Court for Knox County
No. 111922    Kyle A. Hixson, Judge[2]**

_____

**No. E2022-01290-CCA-R3-CD**

_____


Leonard John Clemons, Defendant, was convicted of attempted burglary, burglary, vandalism, and two counts of theft.  For those convictions, Defendant was sentenced as a career criminal to a total effective sentence of 24 years, 11 months, and 29 days.  After the trial court denied his motion for new trial, Defendant appealed.  On appeal, Defendant argues that the trial court erred by denying a continuance based on discovery violations and that the evidence is insufficient to support his convictions.  Because Defendant has waived his challenge to discovery violations and because the evidence is sufficient to support the convictions, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JILL BARTEE AYERS, JJ., joined.

Josh Hedrick, Knoxville, Tennessee (at motion for new trial and on appeal), and Chelsea Moore (at trial), Knoxville, Tennessee; and for the appellant, Leonard Clemons.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Oral argument was heard in this case at the University of Tennessee College of Law in Knoxville, Knox County, Tennessee.

[2] The Honorable Bob R. McGee presided over Defendant's trial.  He retired prior to the hearing on the motion for new trial, which was heard by the Honorable Kyle A. Hixson.  Judge Hixson was subsequently appointed to this Court in September 2022.

# OPINION

Defendant was indicted by the Knox County Grand Jury in November 2017 for a total of thirty-nine counts of various offenses including burglary, theft, vandalism, and attempted burglary. Prior to trial, the trial court granted a motion to sever some of the counts. The jury trial at issue herein pertained specifically to counts 32-36, charging Defendant with attempted burglary, burglary, two counts of theft of property valued over $1,000 but less than $2,500, and vandalism causing damage of $1,000 or less.

At trial, the State presented proof that Allen Armstrong was the owner of a "tobacco store" called A1 Discount Tobacco on John Sevier Highway on April 13, 2017. A1 Discount Tobacco was open from 8:00 a.m. to 8:00 p.m. When the store was closed a "metal gate close[d] over the front doors." The gate was secured with a "chain." The store was equipped with video cameras. After hearing from his father, Richard Armstrong,[3] about a break-in at his nearby store, Allen Armstrong "checked [his] cameras," saw evidence of a break-in, and provided law enforcement with the footage. Allen Armstrong identified his parking lot and store on the video footage.

The video shows that just before 2:15 a.m., a white Chevrolet Astro van pulled into the empty parking lot of A1 Discount Tobacco. A man, later identified as Defendant, got out of the passenger side of the van. He was dressed in a maroon shirt, green jacket, and maroon Converse tennis shoes. Defendant tried to cut the chain surrounding the metal gate on the front of the store with bolt cutters. The driver of the van carried what appeared to be a red bed sheet. The driver exited the vehicle and helped Defendant. The driver dropped the sheet on the ground. Defendant, unsuccessful with the bolt cutters, retrieved a yellow crowbar from the van and used it to pry the gate open. The men crouched any time a car passed the store. After a few more minutes, the men returned to the van and drove away.

Richard Armstrong owned a store called Quick Service Mart on Asheville Highway in April 2017. Quick Service Mart operates between the hours of 6:00 a.m. and 12:00 a.m. and is located approximately 10-12 minutes by car from A1 Discount Tobacco. Richard Armstrong's store was also the scene of a break-in that same night, about 10-15 minutes after the attempted break-in at A1 Discount Tobacco. Richard Armstrong got a call that the alarm at the store had been set off. He "got in [his] car just as fast as [he] could and went over there." When he arrived, no one was there. Richard Armstrong called the police because "[n]obody" had permission to be inside the store at that time.

---

[3] Because both victims have the same last name, we will refer to each of them by their full name for clarity.

Quick Service Mart was also equipped with video cameras. Richard Armstrong identified footage from the video cameras of the shop taken at 2:21 a.m. on April 13, 2017. The white Chevrolet van parked briefly in front of the store then drove away. The van turned around, drove back to the store, and parked near the front door. Defendant got out of the van with a yellow crowbar and pried the door open. The driver carried a red sheet. The men entered the store and got behind the counter. Defendant searched the cash register and the shelves underneath the register. The driver spread the sheet on the floor under a cigarette display and dumped the cigarettes onto the sheet. The driver eventually rolled the cigarettes up in the sheet and left the store through the front door. Defendant joined him, and carried the yellow crowbar. The men got into the van and drove away.

Richard Armstrong explained that about $3,000 to $4,000 worth of "[c]igarettes and stuff like that" including "a lot of wrapped coins" and money from the cash register were stolen. The break-in also resulted in extensive property damage because the door was "busted" open and the lock was "torn [ ] all to pieces." Richard Armstrong had to "completely" redo the door and replace the cash register. He valued the property damage at just under $1,000.

Detective Fredrick Woodrow Martin, Jr., of the Knox County Sheriff's Office ("KCSO"), investigated the two cases. He started by securing the surveillance video from both stores. He also interviewed the victims. Detective Martin looked for any "similarities" in the footage to determine or "confirm that it [was] the same people." Detective Martin explained that the two people in the videos were wearing the "exact same clothing" and driving "the same [distinctive] vehicle" in each video. The men also had what appeared to be the same red sheet and yellow crowbar. In the video from the A1 Discount Tobacco store, Defendant pulled a "mask [that was obscuring most of his face] down and had his entire face exposed."

Detective Martin identified the driver of the van as Michael Cline[4] from "listening to jail phone calls from [Defendant]." In the telephone calls, Defendant was talking to one of his cousins, who also happened to be cousins with Mr. Cline. Detective Martin also visited Mr. Cline in person, comparing his physical characteristics to the characteristics of the man in the surveillance video. Detective Martin "found the vehicle [used in the break-ins] at [Mr. Cline's] house." Mr. Cline gave Detective Martin a crowbar that "look[ed] like the same crowbar" used in the videos. When Defendant was arrested, officers confiscated a journal from the vehicle in which Defendant was riding. The journal had "Leonard's" written in it along with "some drawings, some layouts of . . . possible places that they were going to break into." The journal also contained lists of "different cigarettes

---

[4] Mr. Cline's name is spelled "Kline" in the transcript and "Cline" elsewhere in the record. Because both parties use the spelling "Cline" in their briefs, we will do the same here.

listed with prices." Detective Martin explained that there were fingerprints on both the journal and the crowbar but "[n]either print was clear enough that [officers] could make an identification."

Almost two weeks later, KCSO Detective Adam Brown received consent to search an apartment from Michelle Worley, the female resident of the apartment on Adair Drive on April 25. Officers had information that Defendant lived at the apartment with Ms. Worley, Defendant's girlfriend, from listening to Defendant's jail phone calls. Ms. Worley indicated that Defendant "stayed there" but that she "didn't want him to stay there anymore." Officers recovered a maroon shirt, green jacket, and maroon tennis shoes consistent with the clothing worn by the person in the surveillance videos during the break-ins at A1 Discount Tobacco and Quick Service Mart from the apartment.

Defendant elected not to testify and did not present any additional proof.

At the conclusion of the proof, Defendant was convicted as charged of attempted burglary, burglary, vandalism, and two counts of theft. Defendant was sentenced to an effective sentence of 24 years, 11 months, and 29 days as a career criminal.

Defendant filed a motion for new trial in which he argued that the evidence was insufficient to support the convictions. Not long thereafter, trial counsel was relieved as appointed counsel and new counsel was appointed. New counsel was then removed after a conflict was discovered and substitute counsel was appointed. Substitute counsel filed an amended motion for new trial, arguing not only that the evidence was insufficient to support the convictions, but also that the trial court erred in denying the motion to suppress, trial counsel was ineffective, and that the State committed several discovery violations. At the hearing on the motion, counsel abandoned the ineffective assistance of counsel allegation. The trial court took the matter under advisement and granted Defendant's request to supplement the record with additional exhibits and an affidavit from trial counsel addressing the discovery claims. The trial court ultimately denied the motion for new trial, and Defendant filed a timely notice of appeal.

### *Alleged Discovery Violations*

Defendant contends that the trial court erred by denying his motion for a continuance based on alleged discovery violations by the State. He asserts that "despite a clear and early request for discovery," the State failed to timely disclose jail phone calls, a crowbar, and fingerprint analysis. The State responds that Defendant is not entitled to relief because the State did not commit any discovery violations and that even if there were discovery violations, Defendant has waived consideration of the issue by agreeing to the State's proposed resolution of excluding the evidence about which he complains.

- 4 -

On the first day of trial, October 16, 2018, defense counsel informed the trial court that the State had just turned over additional evidence, including "the actual physical crowbar[.]" Defense counsel requested a continuance to allow time to further investigate the evidence, or, alternatively, that the trial court exclude the evidence. The State responded that a photograph of the crowbar had been provided to defense counsel "back in January[.]" The trial court asked defense counsel what she "would do with the crowbar if [she] had more time to do it?" Defense counsel expressed concern about whether it had been analyzed for DNA or fingerprints. The prosecutor stated, "No. We did not send the crowbar . . . for DNA testing." The court asked, "And no fingerprints?" The prosecutor responded, "I will double-check with the sheriff's office, but I am not aware of any fingerprint testing either." The trial court commented, "It sounds like the State's turned everything over, . . . I'm just always concerned when a lawyer indicates that he or she may not be prepared for trial." The court asked defense counsel, "Are you seriously concerned that you're not prepared to go forward today." The prosecutor then agreed not to introduce the crowbar into evidence and introduce only photos of the crowbar. The trial court asked defense counsel, "Does that satisfy?" Counsel responded, "Yes, Your Honor." There was no discussion between the parties and the trial court at that time about the recordings of Defendant's jail phone calls.

During the State's direct examination of Detective Martin, the State introduced a photo of the crowbar without objection. During cross-examination, defense counsel asked Detective Martin about latent fingerprints, and Detective Martin responded, "We got a print from the crowbar," but it was not "clear enough that we could made an identification."

Detective Martin testified on direct examination that he learned of Michael Cline's name when listening to Defendant's jail phone call recordings. Detective Martin testified, "So trying to gather information on who may have been with [Defendant], so I was listening to his – jail phone calls is the way I come up with Michael [C]line's name." On cross-examination, defense counsel asked the detective who Defendant was talking to on the jail phone call. Detective Martin answered that it was one of Defendant's cousins and agreed that "family members talk about each other to each other[.]" Defense counsel began to ask about the substance of the calls, and the prosecutor objected on hearsay grounds. Defense counsel then agreed to "move on."

On the second day of trial, after the State had rested its case, defense counsel stated that she had "filed a specific discovery request regarding jail phone calls between [Defendant] and [his cousin] and did not receive those in discovery." Defense counsel stated, "Since they came up in testimony yesterday, I wanted to make note that that was filed and those were not disclosed." Defense counsel continued, "I'm not asking for a mistrial or anything like that," noting that the State did not introduce the phone calls, and

- 5 -

stated, "I just wanted to make sure I put it on the record." The trial court clarified, "Just so I can try to make sure I understand, you're not alleging that any prejudice has occurred against your client; is that correct?" Defense counsel responded, "None that I know of." She agreed that the State disclosed "[a]ll of the evidence that [was] presented in this case."

Rule 16 of the Tennessee Rules of Criminal Procedure establishes the rules for providing discovery in a criminal case. Rule 16 requires the disclosure of tangible objects within the State's possession, custody, or control, when those items are material to preparing the defense, intended to be used in the case-in-chief, or were obtained from or belong to the defendant. Tenn. R. Crim. P. 16(a)(1)(B). Additionally, a defendant is entitled to disclosure of his own relevant recorded statement if it is "within the state's possession, custody, or control" and "the district attorney general knows – or through due diligence could know – that the statement exists." Tenn. R. Crim. P. 16(a)(1)(B)(i). Finally, a defendant is entitled to inspect and copy results of scientific tests if "the item is within the state's possession, custody or control; the district attorney general knows – or through due diligence could know – that the item exists; and the item is material to preparing the defense or the state intends to use the item in its case-in-chief at trial." Tenn. R. Crim. P. 16(a)(1)(G)(i)-(iii).

If a party fails to comply with a discovery request, the court may: (1) order compliance; (2) grant a continuance; (3) prohibit the party from introducing the undisclosed evidence; or (4) enter such other order as it deems necessary under the circumstances. Tenn. R. Crim. P. 16(d)(2). "[W]hether the defendant has been prejudiced by the failure to disclose is always a significant factor" in the court's determining an appropriate remedy. *State v. Smith*, 926 S.W.2d 267, 270 (Tenn. Crim. App. 1995) (citing *State v. Baker*, 751 S.W.2d 154, 160 (Tenn. Crim. App. 1987)). "[T]he burden rests on the defense to show the degree to which the impediments to discovery hindered trial preparation and defense at trial." *State v. Brown*, 836 S.W.2d 530, 548 (Tenn. 1992).

"A discovery violation amounts to reversible error only when the defendant establishes an abuse of discretion and substantial prejudice." *Jernigan v. State*, No. M2019-00182-CCA-R3-PC, 2020 WL 4728117, at *9 (Tenn. Crim. App. Aug. 14, 2020) (citations omitted), *no perm. app. filed*. A trial court abuses its discretion when it "(1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous assessment of the evidence." *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013). "Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense or if the mistake substantially influences the jury." *Jernigan*, 2020 WL 4728117, at *9.

Defendant argues on appeal that he was prejudiced by the alleged discovery violations because the jail phone calls "were brought up in trial in a way that heavily

- 6 -

implied that [Defendant] was recorded on the jail phone talking about committing burglaries with Mr. Cline." Defendant claims that "the testimony at trial was that [Defendant] was identified as the perpetrator from a jail call[, leaving] the impression that [Defendant] had made incriminating statements on the jail call." Defendant asserts that trial counsel was unable to effectively cross-examine Detective Martin about the jail calls "because she lacked the recording itself to impeach or refresh his memory."

The record, however, does not support this contention. Detective Martin testified that he learned about Mr. Cline, Defendant's cousin, after listening to jail phone calls between Defendant and another of his cousins. This testimony in no way identifies Defendant as the perpetrator or "heavily implie[s]" Defendant's guilt as he suggests. As discussed below, there was ample other evidence at trial of Defendant's guilt. Furthermore, the State disclosed the existence of the jail phone calls and informed Defendant how to obtain the recordings in its supplemental discovery response filed on August 28, 2018. The State indicated that it would "provide copies of any [recordings] that [the State] expect[ed] to use in [its] case in chief." Defendant contends that the State sent him "into a circular pattern of being sent elsewhere" and that the Sheriff "refused to provide the information, directing [D]efendant back to the starting point of the prosecution." However, nothing in the record supports this claim. In fact, during the parties' discussion with the trial court on the second day of trial, defense counsel made no mention of her failed efforts to obtain the recordings, acknowledged that the State did not introduce the recordings at trial, and agreed that no prejudice had occurred to Defendant.

Regarding the crowbar, Defendant argues that the State's failure to provide it in discovery deprived him the opportunity to conduct fingerprint analysis and show that the latent fingerprint recovered from the crowbar did not match Defendant's. However, Detective Martin testified that the fingerprint was not "good enough . . . to match anybody." Therefore, there is nothing in the record to demonstrate additional testing would have benefitted Defendant. Defendant asserts that he did not know "that this item of physical evidence exist[ed] and that it ha[d] been the subject of scientific testing." Again, the record does not support this contention. The State filed a supplemental discovery response on January 31, 2018, that included a property receipt for a yellow crowbar that Detective Martin recovered from Michael William Cline, as well as a Forensic Fact Sheet, stating that a crowbar had been "photographed and processed . . . for the presence of latent prints." Another report provided in the same supplemental discovery response stated that the forensic technician who made the report "received one latent lift card [that was] insufficient for AFIS entry due to poor quality and lack of detail."

The record clearly shows that the State disclosed the existence of the crowbar and the jail phone calls well before trial. Additionally, as the State points out, Defendant agreed to the proposed resolution of excluding the disputed evidence at trial and repeatedly

affirmed to the trial court that the State had disclosed all of the evidence it introduced at trial. On appeal, Defendant acknowledges that a continuance is the least harsh sanction available, noting that his trial counsel did not request the more "drastic remedy" of exclusion of the evidence. *See Smith*, 926 S.W.2d at 270 (holding that exclusion of evidence is a "drastic remedy and should not be implemented unless there is no other reasonable alternative."). Defendant asserts that trial counsel was "ill-prepared not by her own fault but by the refusal of the government to play by the rules." Defendant's argument ignores, however, that trial counsel acquiesced in the State's proposed remedy of excluding the disputed evidence.

Defendant has not established that the State violated Rule 16 or that he was prejudiced by the alleged discovery violations. Defendant is not entitled to relief on this issue.

### Sufficiency of the Evidence

Defendant contends that the evidence was insufficient to support his convictions because the State's case was "entirely circumstantial." The State asserts that the evidence was sufficient to support Defendant's convictions. We agree with the State.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden then shifts to the defendant on appeal to demonstrate why the evidence is insufficient to support the convictions. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). This Court considers all of the evidence presented at trial, even if Defendant challenges the admissibility of some of the evidence on appeal. *See State v. Bolton*, No. W2012-02000-CCA-R3-CD, 2014 WL 12653829, at *10 (Tenn. Crim. App. Jan. 31, 2014) (citing *State v. Longstreet*, 619 S.W.2d 97, 100-01 (Tenn. 1981)), *no perm. app. filed*. Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given

to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

"The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

Defendant was charged with burglary, attempted burglary, theft, and vandalism. As relevant here, a person commits burglary by "enter[ing] a building other than a habitation . . . not open to the public, with intent to commit a . . . theft." T.C.A. § 39-14-402(a)(1) (1995). A person commits criminal attempt by acting with intent to complete a course of action that would constitute an offense when the conduct constitutes a substantial step toward commission of the offense. *Id*. § 39-12-101(a)(3). Theft of property occurs when a person, intending "to deprive the owner of property . . . knowingly obtains or exercises control over the property without the owner's effective consent." *Id*. § 39-14-103(a). Finally, a person commits vandalism by causing "damage to or the destruction of any real or personal property of another" without "the owner's effective consent." *Id*. § 39-14-408(b)(1). "Damage" includes "[d]estroying" property, "[t]ampering with property[,] and causing pecuniary loss or substantial inconvenience to the owner." *Id*. § 39-14-408(a)(1)(A)-(B).

Defendant does not challenge the sufficiency of the evidence to support any particular element of the offenses for which he was convicted. Instead, Defendant appears to challenge the proof of his identity as the perpetrator, arguing that "[t]he only proof to connect [Defendant] to this incident is the argument that he owns a shirt similar to the one worn by the man in the break-in."

Identity is an essential element of every crime. *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015). The identification of the perpetrator of a crime is a question of fact for the jury. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005). In resolving questions of fact, such as the identity of the perpetrator, "'the jury bears the responsibility of evaluating the conflicting evidence and accrediting the testimony of the most plausible witnesses.'" *State v. Pope*, 427 S.W.3d 363, 369 (Tenn. 2013) (quoting *State v. Hornsby*, 858 S.W.2d 892, 897 (Tenn. 1993)).

Defendant complains that "[t]here was never any stolen property found in [Defendant's] possession" and "[t]here was no testimony from any accomplice." However, circumstantial evidence alone may be sufficient to establish a perpetrator's identity, *State*

*v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002), and the identity of the perpetrator is a question of fact for the jury to determine, *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt[.]'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)).

Viewed in the light most favorable to the State, the evidence was sufficient for a rational juror to find that Defendant committed the offenses. First, Defendant is seen on multiple surveillance videos attempting to enter A1 Discount Tobacco and breaking into the Quick Service Market. In the A1 Discount Tobacco video, Defendant pulled down his mask, fully exposing his face. In the videos, Defendant is wearing a maroon shirt, green jacket, and maroon Converse shoes, matching the clothing and shoes found by officers in Defendant's girlfriend's apartment. When officers arrested Defendant, they found a journal that had Defendant's first name written inside and appeared to have plans for breaking into different stores to steal and then resell cigarettes. The evidence is sufficient to support Defendant's convictions. Defendant is not entitled to relief.

CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court.

_____
TIMOTHY L. EASTER, JUDGE